UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Maria Guevara, | Case No. 19-cv-1954 (WMW/KMM) |
| Plaintiff, | |
| | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Monogram Meat Snacks, LLC, | |
| Defendant. | |

_____

This matter is before the Court on Defendant Monogram Management Services, Inc.'s[1] (Monogram) motion for summary judgment.  (Dkt. 53.)  Monogram moves for summary judgment as to all of Plaintiff Maria Guevara's claims.  Guevara concedes summary judgment as to Counts V through VII and opposes summary judgment as to Counts I through IV.  For the reasons addressed below, the Court grants in part and denies in part Monogram's motion for summary judgment.

## BACKGROUND

Monogram operates a factory in Chandler, Minnesota, where Guevara was employed for approximately 14 years.  Guevara, whose official job title was "filler/caddie," worked in various roles on Monogram's production line.  Guevara contends that she was

---

[1]    The complaint mislabels Defendant as "Monogram Meat Snacks, LLC."  The corporate entity's name is "Monogram Management Services, Inc."  Monogram produces ready-to-eat snacks.

injured at work on three occasions: April 2014, February 2016 and January 2018.  Each incident is addressed below.

**April 2014 Workplace Injury**

Guevara injured her neck and shoulder while removing 40-pound baskets from a food assembly machine.  Guevara filed a workers' compensation claim in 2014, and she testified at her deposition that she could not remember whether Monogram took any negative action against her for filing the claim.

**February 2016 Workplace Injury**

Guevara was crushed between an electric pallet jack and a machine, injuring her lower back, knee, neck and shoulder.  This incident exacerbated her 2014 shoulder injury. After sustaining these injuries, Guevara filed a workers' compensation claim.  She, again, does not remember whether Monogram took any negative action against her for doing so.

After the April 2014 and February 2016 injuries, a doctor ordered Guevara to limit herself to work that involved only her left hand and ordered Guevara to refrain from lifting more than 5 to 10 pounds.  Guevara gave this doctor's note to Monogram's human-resources department.  Monogram accommodated her disability and allowed Guevara to work in a manner that involved only her left hand.  Usually, employees in her position as a filler/caddie rotate to different tasks during each shift.  But after her injury, Guevara was not required to rotate to different tasks.  Instead, Monogram allowed her to perform only one task—putting labels on boxes with her left hand.  Guevara worked with this accommodation for approximately 18 months.

**January 2018 Workplace Injury and Termination of Employment**

On January 25, 2018, while Guevara was putting labels on boxes with her left hand, a coworker knocked a box off a pallet that, according to Guevara's deposition testimony, fell onto the back of Guevara's neck. The parties dispute whether the box hit Guevara. Monogram subsequently terminated Guevara's employment because, Monogram contends, Guevara falsified her workers' compensation report by asserting that the box hit her.

Martha Ramos and Lourdes Guerrero observed the incident. Guevara testified via deposition that Ramos, the woman who knocked over the box, "came up right away and she apologized." Ramos, in a written statement, said that the box "brushed [Guevara] on her left side." Guerrero, in a written statement, said that she "did not see that the" box hit Guevara.

Guevara testified that, after the incident, she felt dizzy, experienced pain and vomited. Guevara reported her injury to Horacio Mejias, Monogram's Human Resources Manager. Mejias testified that Guevara looked like she was hurt when she reported her injury to him. Mejias reviewed video footage of the incident as part of his investigation of the merits of Guevara's claim.

On March 12, 2018, Guevara provided Monogram a doctor's note stating that Guevara needed to go to the Mayo Clinic for three weeks to receive treatment to help manage her pain. Guevara contends that this note adequately reflected her desire to take Family and Medical Leave Act (FMLA) leave. However, Mejias did not view this note as

a request for FMLA leave because it lacked sufficient detail (such as the dates that Guevara expected to miss work) and it did not comply with Monogram's FMLA leave-request procedures. Guevara testified that this request is the reason Monogram terminated her employment, because Monogram terminated Guevara's employment on March 13, 2018, the day after Guevara gave Monogram the doctor's note.

Mejias investigated Guevara's workers' compensation claim and determined that Guevara falsified her workers' compensation report by lying about the box hitting her. Mejias testified that the video evidence demonstrates that, although a box fell, it did not strike Guevara. Mejias sent the video footage to Nationwide Mutual Insurance Company (Nationwide), Monogram's workers' compensation insurance carrier. Nationwide informed Mejias that it denied Guevara's workers' compensation claim because the video footage shows that the box did not strike Guevara.

Mejias testified that he terminated Guevara's employment solely because she submitted a false injury report. Guevara testified that Mejias told her that Monogram terminated her employment because she filed a workers' compensation claim.

**Pending Complaint**

Guevara commenced this lawsuit on June 27, 2019, in Ramsey Country District Court. Monogram removed the lawsuit to federal court on July 24, 2019. The complaint includes seven counts. After Monogram moved for summary judgment on all counts, Guevara conceded that Monogram is entitled to summary judgment as to Counts V, VI, and VII of her complaint.

Four counts remain in dispute: Count I alleges disability discrimination in violation of the Americans with Disabilities Act (ADA); Count II alleges disability discrimination in violation of the Minnesota Human Rights Act (MHRA); Count III alleges retaliation in violation of the Minnesota Workers' Compensation Act; and Count IV alleges interference with medical leave in violation of the FMLA.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When determining whether summary judgment is warranted, a court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the party opposing summary judgment must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" supporting that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see* Fed. R. Civ. P. 56(c)(1)(A). A claim that is the subject of a motion for summary judgment cannot "get to a jury without any significant probative evidence tending to support the [claim]."

*Rath v. Selection Rsch., Inc.*, 978 F.2d 1087, 1091 (8th Cir. 1992) (quoting *Anderson*, 477 U.S. at 249).

## I.    Guevara's Disability Discrimination Claims (Counts I and II)

Because Guevara fails to establish a prima facie claim of discrimination, Monogram argues, summary judgment should be granted as to Guevara's disability discrimination claims under the ADA and the MHRA.  To establish a prima facie claim of disability discrimination under either the ADA or the MHRA, a plaintiff must prove that (1) she satisfies the statutory definition of disabled within the meaning of the operative statute; (2) she is qualified to perform the essential functions of the job, with or without accommodation; and (3) she suffered an adverse employment action because of her disability.  *See Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 545 (8th Cir. 2021); *Anderson v. City of Coon Rapids*, 88 F. Supp. 3d 977, 982 n.1 (D. Minn. 2015).  Disability-discrimination claims under the ADA and the MHRA are analyzed using the same standards except as to the definition of a disability.  *See Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).   The MHRA uses a "materially limits" major life activities standard to define a disability, and the ADA uses a "substantially limits" major life activities standard.  *Id.*  The difference in definition is immaterial here because the parties do not dispute Guevara's disability.

If a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for its actions.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the employer articulates a satisfactory reason,

the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. *See Koziek v. County of Seward*, 539 F.3d 930, 935 (8th Cir. 2008).

### A. Disability under the ADA and the MHRA

The parties do not dispute that Guevara is disabled within the meaning of the ADA and the MHRA, and the record reflects that this element of Guevara's claims is satisfied.

To demonstrate that she is disabled under the ADA and the MHRA, Guevara must show that she (1) has a physical, sensory, or mental impairment that materially or substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); Minn. Stat. § 363A.03, subdiv. 12. "Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, and working." *Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 (8th Cir. 2007).

Guevara is limited to the use of one arm and has a physician-ordered lifting restriction that directs her not to lift more than 5 to 10 pounds. Monogram accommodated this impairment by allowing Guevara to limit her job task for approximately 18 months to only putting "labels on boxes with her left hand." This accommodation varied from the norm, in which other employees in Guevara's position rotate through different tasks during each workday. The record reflects that Guevara has a physical impairment that materially and substantially limits her major life activities, she has a record of her impairment, and Monogram regarded her as having an impairment.

Accordingly, Guevara has established that she is disabled within the meaning of the ADA and the MHRA.

### B.     Qualification to Perform the Essential Functions of the Job

Monogram contends that Guevara cannot prove her prima facie case of disability discrimination because she is not qualified to perform the essential functions of the position. Guevara responds that it is Monogram's burden to prove that Guevara is not qualified, and Monogram has failed to meet that burden.

Under both the ADA and the MHRA, to be qualified to perform the essential functions of a job, a plaintiff must (1) meet the necessary prerequisites for the job, such as education, experience and training; and (2) be able to perform the essential job functions with or without reasonable accommodation. *See Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 741 (D. Minn. 2017), *aff'd*, 910 F.3d 399 (8th Cir. 2018). If an employer "contends that the person is not a qualified disabled person, the burden is on the [employer] to prove that it was reasonable to conclude the disabled person, with reasonable accommodation, could not have met the requirements of the job." Minn. Stat. § 363A.03, subd. 36.

Monogram argues that Guevara was not qualified to perform the essential functions of a filler/caddie, because she could not lift up to 60 pounds, which is part of her job description. But this argument ignores the statutory phrase "with reasonable accommodation." *Id.* Guevara worked as a filler/caddie with her disability for approximately 18 months because Monogram accommodated Guevara's disability by allowing her to limit her job to applying labels on boxes with her left hand. Mejias testified

that Guevara's accommodation did not affect Monogram's productivity, because "that job needs to be done by somebody." And Monogram has not established that lifting 60 pounds is an essential job function. While the record reflects that Guevara was not able to lift 60 pounds, it also reflects that she had been working as a filler/caddie for approximately 18 months with a reasonable accommodation.

Accordingly, there is a genuine dispute of material fact as to whether Guevara is qualified to perform the essential functions of the job with an accommodation.

### C.  Adverse Employment Action

The parties do not dispute that Guevara suffered an adverse employment action, which is "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). The parties agree, and the record reflects that Guevara's employment was terminated, which is an adverse employment action. Accordingly, Guevara suffered an adverse employment action within the meaning of the ADA and the MHRA.

### D.  Disparate Treatment

The parties dispute whether Guevara's employment was terminated *because of her disability.* Monogram contends that it terminated Guevara's employment solely because she lied about the box hitting her. Guevara maintains that the box hit her. If it is true that

the box hit Guevara, this fact supports an inference that Monogram used dishonesty as a pretext to fire Guevara for illegitimate reasons.

There is a genuine dispute as to whether the box hit Guevara. Guevara testified that the box hit her and caused her to suffer an injury. Ramos, the woman who knocked the box over, reported in a written statement that the box "brushed [Guevara] on her left side," Guevara's "face was looking really bad" after the incident, and Ramos told Guevara to report the incident. Mejias testified that Guevara looked like she was hurt when she reported her injury to him. And the security camera video evidence is inconclusive, as it does not clearly show whether the box hit Guevara. There is a genuine dispute of material fact as to whether the box hit Guevara, and a "reasonable jury could find that [Monogram's] decision to terminate [Guevara] . . . resulted from [Monogram's] knowledge of her disability." *Hustvet*, 283 F. Supp. 3d at 742. This dispute precludes summary judgment as to Guevara's disability-discrimination claims.

Accordingly, the Court denies Monogram's motion for summary judgment as to Counts I and II.

## II.   Guevara's Retaliation Claim under the Minnesota Workers' Compensation Act (Count III)

Monogram argues that Guevara's retaliation claim fails for two reasons: because she cannot establish a causal connection between her filing a workers' compensation claim and Monogram terminating her employment, and because her dishonesty was a legitimate reason for Monogram to terminate her employment. Guevara, who disputes these

contentions, maintains that she has established a prima facie claim of retaliation under the Minnesota Workers' Compensation Act.

The Minnesota Workers' Compensation Act provides:

> Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages . . . .

Minn. Stat. § 176.82, subd. 1.  To survive a motion for summary judgment on a retaliation claim, a plaintiff must either produce direct evidence of retaliation or establish an inference of retaliation under the *McDonnell Douglas* burden-shifting framework.  *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011); *see also McDonnell Douglas*, 411 U.S. at 802–03.[2]  A prima facie case of retaliation exists when a plaintiff establishes: she engaged in protected activity; she suffered an adverse employment action; and there was a causal connection between the two.  *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1161 (8th Cir. 2016); *see also Benson*, 561 N.W.2d at 539.

The parties do not dispute that Guevara's workers' compensation request is a protected activity and her termination was an adverse employment action.  *See, e.g.*,

---

[2]      "The *McDonnell Douglas* test requires: (1) the plaintiff to bear the initial burden of establishing a prima facie case (i.e., that his or her discharge was the result of seeking workers' compensation benefits); (2) the burden of production then shifts to the employer to articulate a legitimate reason for the discharge; and (3) if the employer articulates a legitimate reason, the burden of production shifts back to the plaintiff to show pretext and the factfinder must determine whether the illegitimate reason (i.e., seeking workers' compensation benefits) was more likely than not the reason for discharge." *Benson v. Nw. Airlines, Inc.*, 561 N.W.2d 530, 539 (Minn. Ct. App. 1997).

*Schmitz v. U.S. Steel Corp.*, 831 N.W.2d 656, 671 (Minn. Ct. App. 2013) (holding that seeking workers' compensation benefits is protected activity), *aff'd,* 852 N.W.2d 669 (Minn. 2014). But there is a genuine dispute as to whether there is a causal connection between Guevara's protected activity and Monogram's termination of Guevara's employment.

As direct evidence of retaliation, Guevara relies on her deposition testimony that Mejias told Guevara on March 13, 2018, that she was being terminated because she filed a workers' compensation claim.  To impeach this testimony, Monogram provided the Court with a transcribed recording of a March 13, 2018 conversation in which Mejias informed Guevara that Monogram was terminating her employment.  In response, Guevara testified that, during the recorded conversation, Mejias said he was terminating her employment because she filed a false report.  Guevara persisted, testifying under oath that Mejias told her that she was being terminated for filing a workers' compensation claim.  While Guevara's testimony may appear to be inconsistent, a recording of a single conversation, does not preclude the possibility that Mejias told Guevara on another occasion that day, that her employment was being terminated because she filed a workers' compensation claim.

Mejias testified under oath that he did not consider Guevara's previous injuries or the cost of her workers' compensation claim when deciding to terminate Guevara's employment.  Instead, he decided to terminate Guevara's employment because she lied about the box hitting her.  On a motion for summary judgment, the Court neither weighs

the evidence, makes credibility determinations, nor attempts to discern the truth of any factual dispute. *See Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943–44 (8th Cir. 2008). Here, the evidence is sufficient to demonstrate a genuine dispute as to the material fact of whether Guevara was terminated in retaliation for filing a workers' compensation claim. And when viewed in the light most favorable to Guevara, the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party, Guevara. *See id.* at 944.

Guevara has provided sufficient evidence to establish an inference of retaliation to defeat summary judgment. *See McDonnell Douglas*, 411 U.S. at 802–803. Substantial questions of fact exist regarding whether Monogram terminated Guevara's employment for dishonesty or whether Monogram terminated Guevara's employment in retaliation for her seeking workers' compensation.

Accepting Guevara's version of the facts, Monogram had no legitimate basis for terminating Guevara's employment for "dishonesty," because the video evidence demonstrates that the box hit her. Monogram argues that the video evidence demonstrates that Guevara was not hit by the box and that Monogram fired Guevara for dishonesty. But the Court has reviewed the video evidence, and despite Monogram's interpretation, this evidence is not dispositive. Whether or not the box hit Guevara is unclear. As such, a reasonable jury could find that the box hit Guevara and Monogram's stated reason for termination of employment is pretextual. *See, e.g.*, *McDonnell Douglas*, 411 U.S. at 802–

803 (holding that if a plaintiff establishes a prima facie case of retaliation, the defendant must articulate a legitimate, nonretaliatory reason for terminating plaintiff's employment).

The parties' genuine dispute as to Monogram's reason for terminating Guevara's employment precludes summary judgment as to this claim. Monogram's proffered reason for termination—dishonesty—is inextricably intertwined with Guevara filing her workers' compensation claim, which is the protected conduct at issue. Monogram fails to establish that a reasonable jury could not find that Guevara's termination was in retaliation for her seeking workers' compensation. *See Pye*, 641 F.3d at 1022–23. Accordingly, the Court denies Monogram's motion for summary judgment as to Count III.

## III.    Guevara's Interference Claim Under FMLA (Count IV)

Guevara alleges that Monogram prevented her from receiving her full FMLA leave in violation of the law. Monogram responds that Guevara failed to give Monogram adequate notice of her intention to take FMLA leave.

An interference claim[3] arises when an employer denies or interferes with an employee's substantive FMLA rights. *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013). An employee seeking FMLA leave must notify the employer of the need to take a leave of absence and when the employee anticipates returning to work. *Id.* at 1015–16. The notice need not expressly invoke the FMLA, but it must provide the employer information that the health condition "could be serious." *Id.* at 1016 (internal

---

[3]    The complaint labels this as an "interference" claim. Such claims also are referred to as "entitlement" claims.

quotation marks omitted). The employer's duties arise when the notice "provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). Whether an employee has satisfied the notice requirement is a question of fact. *See id.*

Guevara provided Monogram a note from her doctor recommending that Guevara attend a 3-week pain management program at the Mayo Clinic. Monogram contends that the doctor's note was not in accordance with its FMLA leave-request procedures. Viewing the evidence in the light most favorable to Guevara, however, a reasonable jury could conclude that she satisfied the notice requirement because a logical inference from Guevara's submission of the doctor's note is that she intends to take a three-week leave of absence for medical treatment to alleviate her chronic pain. As such, a genuine dispute of material fact exists as to whether Guevara provided sufficient notice to Monogram that she may need FMLA leave.

When an employee's termination of employment is unrelated to FMLA leave, the employer is not liable for an interference or entitlement claim, even if an employer has received adequate notice. *See id.* at 911. It is the employer's burden, however, to prove that the reason for termination is unrelated to FMLA. *Id.* Because a genuine dispute exists as to whether Monogram legitimately terminated Guevara's employment because of dishonesty, a jury could reasonably conclude that Guevara was terminated for seeking FMLA leave. This is particularly true as Monogram terminated Guevara's employment the day after she provided Monogram a doctor's note prescribing a 3-week comprehensive

pain management program.  In light of these circumstances, a genuine dispute of material fact exists as to whether Guevara's termination was related to her request for FMLA leave.

Accordingly, the Court denies Monogram's motion for summary judgment as to Count IV.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Monogram Management Services, Inc.'s motion for summary judgment, (Dkt. 53), is **GRANTED IN PART AND DENIED IN PART** as follows:

1.    Monogram's motion for summary judgment as to Counts V, VI and VII of the complaint is **GRANTED**; and

2.    Monogram's motion for summary judgment as to Counts I, II, III and IV of the complaint is **DENIED**.


Dated:  September 15, 2021                              s/Wilhelmina M. Wright
                                                        Wilhelmina M. Wright
                                                        United States District Judge